Registrar of Guayama, Petitioner and Appellant, *v.* Attorney General, Respondent and Appellee.

Appeal from the District Court of Guayama in a Mandamus Proceeding.

No. 2188.—Decided April 19, 1920.

Mandamus — Public Employee — Approval of Appointment — Attorney General.—The approval of the appointment by a registrar of property of a

subordinate employee in the registry is not a ministerial duty of the Attorney General of Porto Rico, but a discretional act; therefore the courts can not interfere to compel him to approve such appointment by means of a writ of mandamus.

The facts are stated in the opinion.

The appellant appeared *pro se.*

The appellee appeared *pro se* and by *Mr. J. E. Figueras, Fiscal.*

Mr. Justice Hutchison delivered the opinion of the court.

The petition herein, stripped of irrelevant matter and conclusions of law, sets forth in substance that petitioner, a registrar of property, in order to fill a vacancy in his office force, appointed a certain individual, submitting the appointment to the Attorney General for approval and that the Attorney General, notwithstanding the repeated request of petitioner, had not approved and refuses to approve such appointment.

The prayer was for an alternative writ commanding the Attorney General to approve the appointment in question or to show cause why the peremptory writ should not issue, and for a peremptory writ ordering such approval.

The registrar appeals from a judgment of dismissal and assigns as error the two grounds on which the action of the court below was based, to wit:

1. That the appointment of employees in the registries of property, in so far as it refers to the Act of March 10, 1904, assigning salaries to the registrars of property, is a matter originating in the American law.

2. That the approval or non-approval of appointments to fill vacancies in the registries is a matter within the power of the Attorney General, and that such act is merely discretional and not ministerial, and that, in the exercise of such power the Attorney General may exercise discretion and good judgment for the good of the service of the department of justice, of which he is the chief and of which the registries of property are a part.

Under the Spanish regime the registrars received no salaries from the State, but retained certain fees fixed by law and employed and paid such clerks and assistants as they needed or desired. Article 301 of the Mortgage Law, until superseded by section 13 of "An Act assigning salaries to the registrars of property, and for other purposes," approved March 10, 1904, provided that—

"Each registry shall have such clerks and assistants as the registrar may require, who shall perform the duties which the latter may direct them to perform but under his sole and exclusive responsibility."

Section 13 of the law of 1904 reads as follows:

"The subordinate employees of the various registries of property shall be appointed by the respective registrars, with the approval of the Attorney General, and shall receive their salary monthly in the same manner as the respective registrars."

Section 32 of the same law provides that:

"Number six of the general rules of the mortgage law shall be without any force and effect as far as it relates to the schedule of fees of registry of property, and all laws or orders, or parts of same, in conflict with the provisions of this act, are hereby repealed."

From Ruling Case Law we quote as follows:

"There appears to be some conflict in the authorities as to what constitutes an appointment to office. The most approved statement is that an appointment has been made where the power is absolute and the appointee has been determined on and no further consent or approval is necessary. It seems that the element of the exercise of discretion is of the essence of an appointment." 22 R. C. L. 422.

"Wherever under a constitutional or statutory provision the appointment is required to be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office." *Idem,* 433.

"The rule is firmly established that the judiciary will not interfere with the executive officers in the performance of duties which are discretionary in their nature or involve the exercise of judgment. Although courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of the acts of

public officers, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts." *Idem,* 490.

The argument that the heavy responsibilities imposed upon the registrar by law demand an absolute power in the appointment of his subordinates goes merely to the wisdom of the innovation introduced by the Legislature, a question with which we have nothing to do. That the effect of the law of 1904 was to substitute public officials paid by the government for the personal employees remunerated by the registrar out of his own pocket pursuant to the provisions of article 301 of the Mortgage Law and to place some limitations on the power of appointment, is too plain for argument. Appellant apparently does not contend or at least cites no authority for the proposition that under the Spanish law a statutory provision for the appointment of subordinate officials by a public officer subject to the approval of the administrative superior of the appointing officer confers on him absolute power and vests no discretion or supervisory control whatever in such superior. Indeed, the brief contains nothing to indicate even that the modification made in 1904 could be traced to any precedent of Spanish origin. In the circumstances we need not dwell upon the question of interpretation as affected by the genealogy of the later law.

Appellant also discusses at some length certain matters in connection with the Civil Service Law, but there is nothing whatever in the record to justify any serious consideration of the questions so suggested.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.